UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NANCY GLEIS,
:
    Plaintiff,
:
v.
: CASE NO. 3:04CV2217 (DFM)
JOHN BUEHLER, SEAN COONEY and
CITY OF STAMFORD,
:
    Defendants.
:

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

The *pro se* plaintiff, Nancy Gleis, brings this action for alleged violations of her constitutional rights by the City of Stamford and two of its police officers, Officer John Buehler and Sergeant Sean Cooney. Pending before the court are the defendants' motion for summary judgment (doc. #35) and the plaintiff's motion for summary judgment (doc. # 32).

## I. Factual Background

The following facts are undisputed.[1] On Friday, May 10, 2002, Defendant John Buehler of the Stamford Police Department investigated a complaint made by Angela McKinley regarding certain conduct by the plaintiff. (Doc. #47, Joint Stip., ¶ 1.)

According to Buehler's Incident Report, McKinley told him

---

[1] The parties filed a Joint Stipulation (doc. #37) as to certain undisputed facts. In that document, they also stipulated to the authenticity and admissibility of certain documents from the police file and from the underlying criminal action. The truth and accuracy of the contents of some of these documents is, disputed, but the truth and accuracy of the documents are not relevant for purposes of this decision.

that while she was waiting to park in a "customer with infants" parking spot in the parking lot of a Stop & Shop supermarket, a driver in a green Toyota Camry[2], later identified as the plaintiff, cut her off and took the parking space. (Joint Stip., Ex. A.)  According to McKinley, the plaintiff got out of her car and came over to McKinley's vehicle, yelling profanities at McKinley and her three year old daughter, Caitlin. (Id.)[3]  The plaintiff went into the Stop & Shop.  As McKinley was taking Caitlin out of the car, the plaintiff came out of the store and again directed profanities towards both McKinley and her daughter. (Id.) Finally, as McKinley and Caitlin were in the crosswalk walking towards the store, the plaintiff allegedly sped her car straight at them. (Id.)  McKinley reported that the plaintiff's car came within approximately ten feet of hitting them. (Id.)  At that point, McKinley ran to the customer service desk in the store and called the police.  (Id.)[4]

---

[2]McKinley gave Buehler the license plate number of the car, and he traced the vehicle to the plaintiff, Nancy Gleis. (Joint Stip., Ex. A.)

[3] Among other things, the plaintiff allegedly said to Caitlin that "little wastes like you cost me money to support.  Tell your mommy to stop ____ every man she sees." (Id.)  (The profanities are redacted in the Incident Report as submitted to the court.) McKinley told the police that the plaintiff at one point held her keys six inches from Caitlin's face, and McKinley was frightened for both herself and her daughter. (Id.)

[4]Angela McKinley's provided a sworn statement to the police later that day. (Joint Stip., ¶ 3.)  Her statement corroborates the Incident Report. (See Joint Stip., Ex. B.)

2

After talking to McKinley at the store, defendant Buehler went to the plaintiff's townhouse and spoke to plaintiff briefly through a window. (Joint Stip., ¶ 2.) She refused to open the door. (Id.) Defendant Sean Cooney joined defendant Buehler outside the plaintiff's home. (Id.)

The plaintiff subsequently faxed a three-page letter dated May 12, 2002 to the attention of defendant Cooney. (Id., ¶ 6, Ex. C.) The fax gave her version of the events in the parking lot.[5] (Id., ¶ 6.) The plaintiff's fax also stated that she had "contacted Stop & Shop and requested that no video tapes of the parking area near the outdoor plants be erased." (Id. at 2.) She insisted that the videos "would clearly show that I did not attempt to hit her or her child." (Id.) The defendants never obtained or viewed the videotapes. (Joint Stip.,¶ 9.)

On May 21, 2002, a Superior Court judge signed a warrant for the plaintiff's arrest. (Joint Stip., ¶ 11.) The warrant application included an affidavit by defendant Buehler. (Joint Stip., Ex. E.)[6] The affidavit summarized McKinley's complaint

---

[5]In her fax, the plaintiff claimed that the other driver "instigated the verbal exchange and that her language was foul and obscene." (Id.) The fax also stated that McKinley and her child were out of the crosswalk by the time plaintiff drove past them and that the plaintiff "specifically went out of my way to move away from her as I was driving past her." (Id.)

[6]The affidavit supporting the warrant application was signed by John Buehler as the affiant and was witnessed by Sean Cooney. As required by Conn. Gen. Stat. § 54-2a, the Application for Arrest Warrant itself was signed by a "Prosecutorial Official." The last

3

and stated that the plaintiff refused to open the door to defendant Buehler despite being told that an arrest warrant would be issued if she did not. (Id.) The affidavit also stated that Buehler "received a three-page fax from Sgt. Cooney on 5-14-02 that Glies [sic] sent him. In the fax, Glies [sic] admits to parking in the customer with infant only parking spot and having an argument with McKinley. A copy of the fax is attached to this affidavit." (Id.) It is undisputed, however, that a copy of the plaintiff's fax was not in fact attached to the affidavit. (Id., ¶ 14.) The warrant application did not contain any reference to the Stop & Shop videos. (See id.)

Although the arrest warrant was issued on May 21, 2002 the plaintiff was not arrested until October 23, 2002. (Joint Stip., ¶¶ 11, 13.) In the meantime, on June 8, Stop & Shop erased its videotapes, apparently based on the store's normal procedures. (Id., ¶ 12.) Thus, by the time of plaintiff's arrest, it was too late to obtain the potentially exculpatory videos.

The plaintiff was prosecuted in state court for risk of injury to a minor, breach of peace, and attempted assault in the second degree. (Id., ¶ 16.) On December 9, 2004, the criminal case was dismissed with prejudice. (Id., ¶ 27, Ex. N.)

---

name of this signature appears to be Colombo. The plaintiff alleges in her complaint that the case against her was prosecuted by Assistant State's Attorney Michael Colombo. (2d Am. Compl., ¶ 29.)

Plaintiff subsequently filed this action alleging, *inter alia*, false arrest, malicious prosecution and violation of her due process rights. She alleges that as a result of the defendants' conduct, she spent more than 24 hours in a jail cell, paid bail of $25,000, was required to "attend court on many occasions as an accused criminal" and expended legal fees for her defense. (2nd Am. Compl., ¶ 31.) She also alleges that the conduct caused her humiliation, damage to her reputation, loss of income and severe emotional distress and that she was forced "to sell the only real property she owned." (Id., ¶ 32.)

## II. Standard of Review

A party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of showing the absence of any genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A party opposing a . . . motion for summary judgment bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'" Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (quoting Celotex, 477 U.S. at 324). The court must view the evidence in the record in the light most

favorable to the non-moving party, drawing all reasonable inferences in that party's favor. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

Where the plaintiff is proceeding *pro se*, her submissions "must be held to less stringent standards than formal pleadings drafted by lawyers." Hughes v. Rowe, 449 U.S. 5, 10 n.7 (1980)(internal citations and quotation marks omitted). Her pleadings "must be read liberally and interpreted to raise the strongest arguments that they suggest." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

**III. Discussion**

    **A. False Arrest**

The defendants argue that summary judgment should be granted as to plaintiff's false arrest claims because the officers had probable cause to arrest her.[7] The elements for false arrest are controlled by state law. Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004). "Under Connecticut law, an absence of probable cause is an essential element of a false arrest claim." Blalock

---

[7]The defendants also urge the court to apply the doctrine of collateral estoppel to bar certain of the plaintiff's claims which they contend were previously decided in the criminal case. The plaintiff responds that collateral estoppel should not apply because she did not receive a full and fair hearing in the Superior Court and because its decision was not necessary to support a valid and final judgment on the merits. (Pl's Mem. at 7.) Because the court grants summary judgment to the defendants on all of the plaintiff's claims on other grounds, it need not reach the collateral estoppel issue.

6

v. Bender, No. 3:04CV1519(PCD), 2006 U.S. Dist. LEXIS 39323, *13 (D. Conn. June 1, 2006).

The issuance of a facially valid warrant creates a presumption that probable cause exists, and "a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." Golino v. New Haven, 950 F.2d 864, 870 (2d Cir. 1991) (internal citations and quotation marks omitted). The plaintiff must demonstrate that the officer "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause." Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir. 1993).

The plaintiff argues that the police officers lacked probable cause, because they did not obtain the allegedly exculpatory Stop & Shop videos. She acknowledges the Second Circuit's holding that "[a]n arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995). She argues, however, that if the officers had obtained the videos, they would have learned of circumstances that raised doubts about the

7

complainant's veracity.

Police officers may not disregard plainly exculpatory evidence in their possession. Russo v. City of Bridgeport, No. 05-4302-cv, 2007 U.S. App. LEXIS 4428 (2d Cir. Feb. 27, 2007)(recognizing constitutional implications under the Fourth Amendment where a plainly exculpatory surveillance video was in the custody of police officers throughout the plaintiff's 217-day detention). However, "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." Panetta v. Crowley, 460 F.3d 388, 395-96 (2d Cir. 2006). "Once an officer has probable cause, he or she is neither required nor allowed to continue investigating, sifting and weighing information." Id. at 398 (holding that where a police officer had received apparently reliable information that a horse's poor condition was due to criminal neglect by her owner, probable cause for the owner's arrest was not eliminated by the officer's failure to investigate the owner's alternative explanations about the horse's ill health or by the officer's refusal to speak to a veterinarian with exculpatory information); see also Frey v. Maloney, No. 3:04CV1149 (MRK), 2007 U.S. Dist. LEXIS 16399 at *39 (D. Conn. Mar. 7, 2007)("The Second Circuit does not 'impose a duty on the arresting officer to investigate exculpatory defenses offered by the person being arrested'")(quoting Jocks v. Tavernier, 316 F.3d 128, 135-6 (2d

8

Cir. 2003).

Here, the defendant officers had probable cause based on the sworn statement of the victim, Angela McKinley. McKinley told the officers that someone in a supermarket parking lot had screamed profanities at her and her young child, while holding her keys inches from the child's face, and had then nearly run over her and her toddler. Officer Buehler was not required to obtain the Stop & Shop videos before seeking an arrest warrant, and the warrant as issued was based on his affidavit properly establishing probable cause.

Because defendant Buehler had probable cause to arrest the plaintiff, the defendants' motion for summary judgment is granted as to the false arrest claim.

In addition to the false arrest claim, the plaintiff also alleges that defendant Cooney wrongfully failed to intervene to prevent Buehler from falsely arresting her. (2d Am. Compl., Count Two.) "Failure to intercede to prevent an unlawful arrest can be grounds for § 1983 liability." Ricciuti v. New York City Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997). Because there was no false arrest here, the claim against Cooney for failure to intervene must also fail as a matter of law. See, e.g., Alfaro v. City of New York, No. 03 Civ. 8206, 2007 U.S. Dist. LEXIS 6408 (S.D.N.Y. Jan. 29, 2007) (where probable cause for the arrest existed, there was no duty to intervene to prevent the

arrest).

## B. Malicious Prosecution

The plaintiff's complaint alleges that the "malicious acts" of defendants Buehler and Cooney caused her to be prosecuted. (2d Am. Compl., Counts Three and Four.)

"'In order to prevail on a §1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment . . . and establish the elements of a malicious prosecution claim under state law.'" Brown v. Aybar, No. 3:05cv606 (JBA), 2006 U.S. Dist. LEXIS 63841, *28 (D. Conn. Sept. 7, 2006) (quoting Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002)). Under Connecticut law, an action for malicious prosecution requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted *without probable cause*; and (4) the defendant acted with malice, primarily for a purpose other than that of securing the proper adjudication of the claim. Mulligan v. Rioux, 229 Conn. 716, 733 (Conn. 1994) (citing McHale v. W.B.S. Corp., 187 Conn. 444, 447 (Conn. 1982). "The existence of probable cause is an absolute protection against an action for malicious prosecution." Vandersluis v. Weil, 176 Conn. 353, 356 (Conn. 1978). Because the court has determined that the defendants had probable cause

10

for the arrest that initiated the plaintiff's prosecution, her malicious prosecution claim fails as a matter of law.

### C. Due Process Claims

Plaintiff's complaint alleges that the defendant police officers violated her due process rights under the federal Constitution and the Connecticut constitution. She argues that her ability to defend herself in the criminal matter was prejudiced because the defendants did not preserve the potentially exculpatory Stop & Shop videos and did not arrest her until after the videos had been erased.

The plaintiff first contends that the defendants violated her due process rights by failing to obtain the Stop & Shop videos before they were erased. The plaintiff relies on cases such as Arizona v. Youngblood, 488 U.S. 51 (1988), Correia v. Rowland, 263 Conn. 453 (Conn. 2003), and State v. Asherman, 193 Conn. 695 (Conn. 1984), which deal with the state's loss or destruction of potentially exculpatory evidence. But these cases are inapplicable, because it is undisputed that the Stop & Shop videos were never in the defendants' possession.

Plaintiff's claim must fail under federal law. The Second Circuit has repeatedly held that police officers have no duty to continue their investigation once they have probable cause for an arrest. Panetta v. Crowley, 460 F.3d 388, 398 (2d Cir. 2006); Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001);

Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997); Henriksen v. Picardi, No. 02C8060, 2006 U.S. Dist. LEXIS 4822 at *33-35 (N.D. Ill. Feb. 7, 2006)("[T]here is no due process right to a full and complete police investigation"). If the officers had no duty to continue the investigation by obtaining the videotapes, they cannot be held liable for failing to do so. The defendants were not required to gather and preserve all possible evidence for the plaintiff's benefit.

The plaintiff also argues that her due process rights were violated because the police did not execute the arrest warrant until it was too late to preserve the videos for her defense.[8] She does not claim that the delay in arresting her, by itself, violated her constitutional rights or any statutory or procedural requirement. Rather, her claim is solely based on the fact that the videos were destroyed during the delay.[9] Given that the officers had no duty to continue their investigation or to seek out additional evidence after the warrant was issued, the officers may not be held liable because Stop & Shop independently erased the videotapes before the arrest warrant was executed.

---

[8]The plaintiff was arrested in October 2002. (Joint Stip., ¶ 13.) However, it is undisputed that the videotapes were destroyed on or about June 8, 2002, less than three weeks after the arrest warrant was issued. (Id., ¶ 12.)

[9]The court notes that the plaintiff's fax informed the defendant police officers that she had already asked Stop & Shop to preserve the videos. (Joint Stip., Ex. C.)

12

The court therefore grants the defendants' motion for summary judgment on the federal due process claims.[10]

**D. Conspiracy**

The plaintiff next alleges that the police officers conspired with each other and with Assistant State's Attorney Michael Colombo to falsely arrest and maliciously prosecute her. The court has found that the officers had probable cause and did not falsely arrest or maliciously prosecute the plaintiff.

To the extent that the plaintiff alleges that the officers conspired with the state's attorney, her claim fails as a matter of law. "A plaintiff is not required to list the place and date of defendants' meetings and the summary of their conversations when he pleads conspiracy, but the pleadings must present facts tending to show agreement and concerted action." Fisk v. Letterman, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005). Plaintiff fails to allege facts supporting a conspiracy claim. Viewing the evidence in the light most favorable to the plaintiff, the court finds nothing to suggest that the defendant officers conspired with the prosecutor. The court grants summary judgment to the defendants as to the plaintiff's federal conspiracy claim.[11]

---

[10]The plaintiff's state law claim is discussed in Section F below.

[11]To the extent that this count alleges state law claims, they are discussed below with plaintiff's remaining state law claims.

13

**E. Claims Against City of Stamford**

The plaintiff has sued the City of Stamford for *respondeat superior* liability as well as for direct Section 1983 liability. It is well established that a municipality cannot be held liable in a section 1983 suit under the theory of *respondeat superior*. Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978). The *respondeat superior* claim therefore fails as a matter of law.[12]

Count Ten alleges a direct Section 1983 claim against the City of Stamford for its "acts and omissions." (2d Am. Compl., ¶54.) The plaintiff claims that the city failed to train the police officers, lacked policies and customs that would prevent misconduct, and failed to investigate and discipline officers who committed misconduct. (Id. ¶ 34.) The court has found that there was no misconduct by the defendant police officers. The court therefore grants the defendants summary judgment as to the federal law claim in Count Ten.

**F. State Law Claims**

The court has granted the defendants summary judgment as to all of plaintiff's federal claims. Where all federal claims have been dismissed, pendent state law claims may be dismissed without prejudice and left for resolution by the state courts. See 28

---

[12]To the extent that state law claims are implicated in Count 9, they are discussed below with plaintiff's remaining state law claims.

U.S.C. § 1367(c)(3); Giordano v. New York, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases).[13]

The plaintiff's pendent state law claims are dismissed without prejudice to refiling in state court.

**IV. Conclusion**

For all the foregoing reasons, the defendants' motion for summary judgment [35] is granted. Plaintiff's motion for summary judgment [32] is denied.

SO ORDERED at Hartford, Connecticut this 26th day of March, 2007.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge

---

[13] Dismissal is also appropriate where the state law claims raise novel or complex issues of state law. 28 U.S.C. § 1367(c)(1). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

15