UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

NANCY GLEIS,                          :
                                     :
        Plaintiff,                   :
                                     :
        v.                           :     CASE NO. 3:04CV2217 (DFM)
                                     :
JOHN BUEHLER, SEAN COONEY and        :
CITY OF STAMFORD,                    :
                                     :
        Defendants.                  :

## RULING ON MOTION FOR RECONSIDERATION

Pending before the court is the plaintiff's Motion to Alter
or Amend a Judgment, doc. #73, seeking reconsideration of the
court's order (doc. #66) granting the defendants' motion for
summary judgment and denying the plaintiff's motion for summary
judgment.

I. Background

The facts of the case are set forth in the court's summary
judgment ruling, and the court presumes familiarity with them.
Gleis v. Buehler, No. 3:04CV2217(DFM), 2007 WL 926907 (D.Conn.,
Mar. 26, 2007).

II.  Motion for Reconsideration

After the court granted summary judgment to the defendants,
the plaintiff retained counsel and asked the court to reconsider
its summary judgment ruling.

The standard for granting a motion for reconsideration is
"strict."  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d
Cir. 1995).  "The only permissible grounds on which to grant a

motion for reconsideration are: (1) an intervening change in the law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice." Martin v. Dupont Flooring Sys., 3:01 CV 2189(SRU), 2004 U.S. Dist. LEXIS 9373, *3 (D. Conn. May 25, 2004)(internal citations omitted).  The plaintiff moves for reconsideration on the third ground, arguing that the court erred in overlooking certain controlling law.

The plaintiff has not demonstrated that the court must correct a clear error of law.  At most, in her moving papers, the plaintiff elucidates arguments she made earlier.  Because she has not met the strict standard for reconsideration, her motion for reconsideration is denied.

III.  Probable Cause in the Arrest Warrant

Even if the motion for reconsideration were granted, the court would reach the same conclusion as it did in its earlier ruling on summary judgment.  Nonetheless, the court discusses here the thrust of the plaintiff's argument on reconsideration: that she should have been granted summary judgment because her arrest warrant was lacking in probable cause, or in the alternative, that there were issues of fact that precluded the granting of the defendants' motion for summary judgment.

An examination of the arrest warrant reveals that it was supported by probable cause.  "[P]robable cause is a fluid concept -- turning on the assessment of probabilities in

2

particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983). "[F]ederal and Connecticut law are identical in holding that probable cause to arrest exists when police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007) (internal citations and quotation marks omitted).

> While probable cause requires more than a mere suspicion of wrongdoing, its focus is on probabilities, not hard certainties. In assessing probabilities, a judicial officer must look to the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in a probable cause determination. Nor can probable cause be analogized to a prima facie case. In sum, probable cause does not demand any showing that a good-faith belief be correct or more likely true than false. It requires only such facts as make wrongdoing or the discovery of evidence thereof probable.

Id. at 156-157.

"Ordinarily, an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause." Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir. 2007). In light of this presumption, "a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden." Golino

3

v. New Haven, 950 F.2d 864, 870 (2d Cir. 1991) (internal citations and quotation marks omitted).  To challenge the probable cause determination in a warrant, the plaintiff must demonstrate that the officer who applied for the warrant "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause."  Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir. 1993).

Where, as here, the plaintiff claims that material information was omitted from the warrant affidavit, the first step in assessing the materiality of the omission is to "correct" the allegedly defective affidavit by inserting the information withheld from the judge.  Cartier v. Lussier, 955 F.2d 841, 845 (2d Cir. 1992).  The court must then determine whether "there remains a residue of independent and lawful information sufficient to support probable cause."  Sullivan v. Stein, 487 F. Supp. 2d 52,78 (D.Conn. 2007.)  "The issue under the corrected affidavit analysis is whether, if [the officer] had included all she learned from her investigation, 'the application would have supported a reasonable officer's [or magistrate's] belief that probable cause existed.'"  Escalera v. Lunn, 361 F.3d 737, 744-45 (2d Cir. 2004), quoting Cartier, 955 F.2d at 845.

> The materiality of these omissions presents a mixed question of law and fact.  Whether omitted information

4

> is relevant to the probable cause determination is a
> question of law . . . If we identify relevancy, then
> questions of fact may arise as to what weight . . . a
> neutral magistrate would likely have given such
> information, and whether defendants acted deliberately
> or recklessly in omitting the information from the
> warrant affidavits.

Walczyk v. Rio, 496 F.3d 139, 158 (2d Cir. 2007)(internal

citations and quotation marks omitted).  "If, after considering

the omitted information, the court determines that probable cause

remains, then 'no constitutional violation of the plaintiff's

Fourth Amendment rights has occurred.'"  Ortiz v. Town of

Stratford, No. 3:07-cv-1144 (AHN), 2008 U.S. Dist. LEXIS 83507

(D. Conn. Oct. 10, 2008), quoting Soares v. Connecticut, 8 F.3d

917, 920 (2d Cir. 1993).

The plaintiff argues that an analysis under the "corrected

affidavit" test compels a ruling in her favor.  She points to

certain statements she made in a letter to the police (Pl's Mem.,

doc. #73-2 at 7-8); the defendant police officers agree they

received the letter and omitted it from the warrant affidavit.

If the affidavit were corrected, it would include the following

statements from the plaintiff's letter:

> (1) Plaintiff claimed that after she pulled into the
> customer with infant parking space, Angela McKinley
> (the victim) "began screaming at me from inside her
> car.  I had to jump out of the way in order to avoid
> being hit by her car as she drove by me, shouting
> obscenities."
>
> (2) Plaintiff claimed to "have a witness, another
> frequent shopper at Stop & Shop, who heard the entire
> conversation and will confirm that the other driver
> instigated the verbal exchange and that her language

was loud and obscene." The witness is not identified in the plaintiff's fax.

(3) As plaintiff was leaving the parking lot, she saw that McKinley and her child had nearly completed crossing the "two lanes of parking lot traffic . . . I knew that she was extremely agitated and I specifically went out of my way to move away from her as I was driving past her."

(4) After learning that McKinley had filed a complaint, plaintiff "contacted Stop & Shop and requested that no video tapes of the parking area near the outdoor plants be erased. (Stop & Shop has two cameras in that area outside the store.) I also contacted the security company for the Ridgeway mall and made the same request since I knew that any video of what happened would clearly show that I not only did not attempt to hit her or her child with my car, but I specifically drove unusually far to the left of them so that I was actually in the lane intended for on-coming traffic as I passed them . . . I have the names of everyone there I spoke with regarding this request."

Even with these corrections, the affidavit supports a probable cause determination. That the plaintiff protested her innocence in a letter to the police does not vitiate probable cause in light of the other evidence, particularly the victim's detailed sworn statement. "[A] showing of probable cause cannot be negated simply by demonstrating that an inference of innocence might also have been drawn from the facts alleged." Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007). Nor would probable cause be eliminated simply because of the claimed existence of exculpatory evidence.[1] An officer "is not required to explore

---

[1]To the extent the plaintiff suggests that Russo v. Bridgeport, 479 F.3d 196 (2d Cir. 2007) imposes a duty on police officers to review easily-obtained surveillance videos in every instance before seeking an arrest warrant, the court is

and eliminate every theoretically plausible claim of innocence before making an arrest," and "the fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause." Panetta v. Crowley, 460 F.3d 388, 395-396 (2d Cir. 2006)(internal citations and quotation marks omitted). See also Leone v. Fisher, No. 3:05CV521(CFD), 2007 U.S. Dist. LEXIS 71860 (D. Conn. Sept. 28, 2007) (correcting affidavit to add protestation of innocence and other information did not eliminate probable cause), aff'd Leone v. Fisher, No. 07-4851-cv, 2009 U.S. App. LEXIS 3987 (2d Cir. Feb. 27, 2009); Cartier v. Lussier, 955 F.2d 841 (2d Cir. 1992)(finding probable cause even though officer's affidavit omitted sworn statements of plaintiff and her family members that she was not driving the car at the time of a fatal accident); Smith v. Edwards, 175 F.3d 99, 105 (2d Cir. 1999) (where plaintiff was arrested based on the accusations of his wife and daughter that he had sexually molested the daughter, the omission of information tending to undermine the reliability of their statements did not eliminate probable cause where there was other reasonably trustworthy information corroborating their accounts); Shattuck v. Stratford,

_____

unpersuaded. Indeed, the Russo decision affirmed the district court's finding that probable cause for an arrest existed based on a photographic identification, even though the ultimately exculpatory surveillance video was already in the officers' possession at the time the arrest warrant was issued. Neither Russo nor other cases in this Circuit require officers who have probable cause to delay their warrant application and obtain surveillance videos or other physical evidence whenever a suspect suggests that such evidence might prove her innocence.

233 F. Supp. 2d 301 (D. Conn. 2002)(officer had probable cause to seek a warrant for plaintiffs' arrest on forgery charges even though his affidavit did not mention the plaintiffs' statement to him that they had documents in their possession that would prove the records were not forged).

Although the court did not previously reach the issue of qualified immunity, the defendants also would be entitled to summary judgment under that doctrine.

> Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  In assessing an officer's eligibility for the shield, the appropriate question is the objective inquiry whether a reasonable officer could have believed that [his actions were] lawful, in light of clearly established law and the information the officer[] possessed.

Kelsey v. County of Schoharie, 567 F.3d 54, 61 (2d Cir. 2009)(internal citation and quotation marks omitted).  "The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right." Golino v. New Haven, 950 F.2d 864, 870 (2d Cir. 1991).

"Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004).  "Arguable probable cause

8

exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Id., quoting Golino v. New Haven, 950 F.2d 864, 870 (2d Cir. 1991). See also Walczyk v. Rio, 496 F.3d 139, 163 (2d Cir. 2007). "Thus, the analytically distinct test for qualified immunity is more favorable to the officers than the one for probable cause; 'arguable probable cause' will suffice to confer qualified immunity for the arrest." Escalera, 361 F.3d at 743.

Under the circumstances of this case, either test is met. Because the court has found that the arrest warrant was supported by probable cause, it must also conclude that it was objectively reasonable for the officers to believe that probable cause existed. In the alternative, even if the arrest warrant lacked probable cause, officers of reasonable competence could disagree about whether there was probable cause to arrest the plaintiff. Therefore, the defendant officers are entitled to qualified immunity as to all of plaintiff's claims.

IV. Remaining Arguments

The other arguments made by the plaintiff were suitably addressed by the court in its original ruling on summary judgment. For the reasons set forth therein, the defendants were not required to further investigate the plaintiff's claims prior to obtaining an arrest warrant, and the delay in executing the

9

arrest warrant was not unreasonable.[2]  Finally, as to the conspiracy claim, the plaintiff argues that she should have been permitted to amend her complaint.  However, at the summary judgment stage, a plaintiff may not rely on her allegations but must present evidence demonstrating the existence of a conspiracy.  The court specifically found that, viewing the record in the light most favorable to the plaintiff, she had failed to present such evidence.  Having come to the summary judgment stage of the case, the plaintiff was not entitled to amend her complaint to try again to state a cause of action.

V.   Conclusion

For the foregoing reasons, the plaintiff's Motion to Alter or Amend a Judgment, doc. #73, is DENIED.

SO ORDERED at Hartford, Connecticut this 6th day of October, 2009.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge

------------------------------------

[2]As the court noted in its summary judgment ruling, the arrest warrant was issued on May 21, 2002, and the Stop & Shop surveillance videos were erased on June 8, 2002.  The plaintiff was arrested on October 23, 2002.  The plaintiff now contends that the defendants' unreasonable delay in executing the warrant "caused substantial and actual prejudice to the accused such that her due process rights were violated."  Pl's Mem., doc. #73-3 at 20.  Plaintiff relies on United States v. Marion, 404 U.S. 307 (1971), United States v. Lovasco, 431 U.S. 783 (1977) and their progeny.  In United States v. Cornielle, 171 F.3d 748 (1999), the Second Circuit held that a party claiming that a pre-indictment delay violated due process would bear "the heavy burden of proving both that he suffered actual prejudice because of the alleged pre-indictment delay *and* that such delay was a course intentionally pursued by the government for an improper purpose."  Id. at 752.  The plaintiff's motion does not point to any evidence that the delay in arresting her was a course intentionally pursued by the defendants for an improper purpose.